1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DUNG A. TRAN,

11            Plaintiff,              No. CIV S-06-0562 DAD

12      vs.

13   MICHAEL J. ASTRUE,               <u>ORDER</u>
     Commissioner of Social Security,[1]

14
             Defendant.
15   _____/

16            This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, the undersigned will affirm the decision of the

19   Commissioner of Social Security (Commissioner).

20                        **PROCEDURAL BACKGROUND**

21            In September 2003, plaintiff applied for Supplemental Security Income benefits

22   under Title XVI of the Social Security Act (Act).  (Transcript (Tr.) at 43-48.)  The Commissioner

23   denied the application initially and on reconsideration.  (Tr. at 25-29, 31-36.)  On May 4, 2005,

24   _____

25        [1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
     Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ.
26   P. 25(d)(1).

pursuant to plaintiff's request dated July 6, 2004, a hearing was held before an administrative law judge (ALJ), at which plaintiff was represented by a non-attorney representative.  (Tr. at 37, 202-22.)  In a decision issued on June 21, 2005, the ALJ determined that plaintiff was disabled as of December 21, 2004 but not prior thereto.  (Tr. at 12-15.)  The following findings were entered:

1.   The claimant has not engaged in substantial gainful activity since August 9, 2003.

2.   The medical evidence establishes that the claimant has the following severe impairments: hepatitis C, hypertension, and major depressive disorder under treatment with medication.

3.   The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

4.   The claimant's assertions concerning his ability to work are credible.

5.   The claimant retains the residual functional capacity to lift and carry 20 pounds occasionally and ten pounds frequently, and sit, stand and walk six out of eight hours.

6.   The claimant is unable to perform the requirements of his past relevant work.

7.   On December 21, 2004, the claimant was of advanced age. Prior to December 21, 2004, the claimant was considered closely approaching advanced age.

8.   The claimant has at least a high school education.

9.   The claimant has a skilled work background, but no transferable skills.

10.   Based on an exertional capacity for light work, and the claimant's age, education, and work experience, a finding of disabled is directed by medical-vocational rule 202.06 beginning December 21, 2004. Prior to December 21, 2004, rules 202.13 and 202.14 directed a finding of not disabled.

11.   The claimant has been under a disability, as defined in the Social Security Act, since December 21, 2004, but not prior thereto (20 CFR §416.920(f)).

(Tr. at 14.)

2

1    Plaintiff requested review of the ALJ's decision.  (Tr. at 7.)  The Appeals Council

2  declined review on January 12, 2006.  (Tr. at 4-6.)  Plaintiff then sought judicial review pursuant

3  to 42 U.S.C. § 405(g) by filing the complaint in this action on March 16, 2006.

4                              **LEGAL STANDARD**

5    The Commissioner's decision that a claimant is not disabled will be upheld if the

6  findings of fact are supported by substantial evidence in the record as a whole and the proper

7  legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

8  (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

9  The findings of the Commissioner as to any fact, if supported by substantial evidence, are

10  conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  "Substantial evidence is

11  'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

12  reasonable mind might accept as adequate to support a conclusion.'"  Sandgathe v. Chater, 108

13  F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995));

14  see also Richardson v. Perales, 402 U.S. 389, 401 (1971).

15    A reviewing court must consider the record as a whole, weighing both the

16  evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones v.

17  Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply

18  by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879

19  F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if

20  there is conflicting evidence supporting a finding of either disability or nondisability, the finding

21  of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and

22  may be set aside only if an improper legal standard was applied in weighing the evidence, see

23  Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

24    In determining whether or not a claimant is disabled, the ALJ should apply the

25  five-step sequential evaluation process established under Title 20 of the Code of Federal

26  /////

1   Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42

2   (1987).  This five-step process can be summarized as follows:

3           Step one:  Is the claimant engaging in substantial gainful activity?
            If so, the claimant is found not disabled.  If not, proceed to step
4           two.

5           Step two:  Does the claimant have a "severe" impairment?  If so,
            proceed to step three.  If not, then a finding of not disabled is
6           appropriate.

7           Step three:  Does the claimant's impairment or combination of
            impairments meet or equal an impairment listed in 20 C.F.R., Pt.
8           404, Subpt. P, App. 1?  If so, the claimant is automatically
            determined disabled.  If not, proceed to step four.
9
            Step four:  Is the claimant capable of performing his past work?  If
10          so, the claimant is not disabled.  If not, proceed to step five.

11          Step five:  Does the claimant have the residual functional capacity
            to perform any other work?  If so, the claimant is not disabled.  If
12          not, the claimant is disabled.

13  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

14          The claimant bears the burden of proof in the first four steps of the sequential

15  evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

16  sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

17  (9th Cir. 1999).

18                                          **APPLICATION**

19          Plaintiff advances a number of arguments in his motion for summary judgment.

20  First, plaintiff asserts that the ALJ erroneously applied the Medical-Vocational Guidelines in a

21  mechanical manner, contrary to the applicable regulations.  Second, plaintiff contends that the

22  ALJ had no basis for his assessment of plaintiff's mental impairment at step three of the

23  sequential evaluation process.  Third, plaintiff argues that the ALJ failed to consider plaintiff's

24  mental impairment in determining his residual functional capacity (RFC).  Fourth, plaintiff

25  maintains that by merely obtaining plaintiff's psychiatric treatment record after the administrative

26  hearing, the ALJ failed to discharge his duty to develop the record.  In this regard, plaintiff argues

                                                4

that the ALJ did not consider plaintiff's mental impairment in determining his RFC and the sole source relied upon by the ALJ to support the RFC finding was ambiguous and triggered the ALJ's duty to further develop the record.  Fifth, plaintiff claims that the ALJ's decision failed to adequately take into account the impact of plaintiff's subjective symptoms on his ability to work. Sixth, plaintiff asserts that the ALJ's RFC assessment failed to consider evidence of plaintiff's mental health treatment.[2]  The court addresses these arguments below, although in an order consistent with the relevant steps of the sequential evaluation process rather than in the order presented by plaintiff.

## I. Basis for Evaluation of Mental Impairment at Step Three

At step three of the sequential evaluation process, a claimant who demonstrates that he suffers from a severe impairment that is either listed in Appendix 1 of the regulations or is equal to a listed impairment will be found disabled without regard to age, education, and work experience.  See 20 C.F.R. §§ 404.1525(a) & 416.925(a).  The Listing of Impairments in Appendix 1 "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 404.1525(a) & 416.925(a).  However, a claimant's impairment will not be considered listed solely because the claimant has the diagnosis of a listed impairment.  Rather, the impairment must satisfy all of the medical criteria of the listing.  See 20 C.F.R. §§ 404.1525(d) and 416.925(d); see also Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990).

/////

---

[2]  In a footnote, plaintiff asserts that there were at least ten errors in the ALJ's decision. (Pl.'s Mot. for Summ. J. at 4 n.4.)  In this regard, plaintiff cites his Statement of the Facts, in which he merely mentions the inaudibility of portions of the tape recording of the administrative hearing and also suggests that the ALJ did not fully advise plaintiff of his right to representation by a lawyer.  (Id.)  Plaintiff has not presented these issues as grounds for summary judgment in his favor.  Nor has plaintiff addressed either issue in any depth.  Accordingly, the court will not address these matters any further herein.

1    At step three, it is the claimant who bears the burden of proof.  See Yuckert, 482

2  U.S. at 146 n.5.  To meet that burden the claimant must provide "complete and detailed objective

3  medical reports of [his] condition from licensed medical professionals" to show that he was

4  disabled under the Act.   Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  See also 20

5  C.F.R. § 416.913.

6    Here, plaintiff claims in general fashion that the ALJ failed to provide a proper

7  basis for his finding at step three that plaintiff's impairments found to be severe at step two do

8  not meet or equal a listed impairment.  Plaintiff claims that the ALJ's reasoning at step three is

9  not supported by substantial evidence.   In advancing this argument, plaintiff specifically

10  mentions only the ALJ's assessment of his mental impairments.  (Pl.'s Mot. at 7.)

11    With respect to plaintiff's mental impairment, the ALJ's reasoning for his step

12  three finding was based on the cumulative record of medical evidence addressing plaintiff's

13  conditions, including the Northgate Point RST records indicating that plaintiff was alert, oriented

14  and cooperative with good eye contact and speech.  (Tr. at 182-201.)  All other medical reports

15  revealed similar findings consistent with the conclusion of the ALJ regarding plaintiff's

16  limitations.  In his decision, the ALJ stated that plaintiff "has no more than moderate restriction

17  in activities of daily living, in maintaining social functioning, and in maintaining concentration,

18  persistence or pace." (Tr. at 13.)  This evaluation by the ALJ was appropriate based on

19  substantial evidence in the record regarding plaintiff's conditions, including any mental

20  impairment.

21    In arguing that he satisfied his burden at step three with respect to his mental

22  impairments, plaintiff cites a Global Assessment of Functioning (GAF) score of 50 in the

23  Northgate Point RST mental health treatment records.  (Tr. at 184.)  Plaintiff claims this score

24  demonstrates adequate severity to meet or equal listed criteria for disability as set forth in the

25  CFR guidelines.  However, the GAF score alone is insufficient to meet plaintiff's burden because

26  plaintiff cited no objective medical evidence of serious symptoms consistent with such a score,

1  such as suicidal ideation, severe obsessional rituals, and frequent shoplifting, or any serious

2  impairment in social or occupational functioning, such as having no friends and being unable to

3  keep a job.  See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental

4  Disorders 34 (4th ed. text rev. 2000).  With no such objective evidence reflecting actual

5  symptoms, the ALJ was not required to find a work-related mental limitation that would result in

6  a disability determination at step three.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006,

7  1012 (9th Cir. 2003) (ALJ "is not required to discuss evidence that is neither significant nor

8  probative" and failure to discuss such evidence did not warrant reversal) (citing Vincent v.

9  Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)); see also Howard v. Comm'r of Soc. Sec., 276

10  F.3d 235, 241 (6th Cir. 2002) ("[T]he ALJ's failure to reference the GAF score in the RFC,

11  standing alone, does not make the RFC inaccurate.").

12        The court finds that substantial evidence supports the ALJ's determination that

13  plaintiff's severe impairments did not meet or equal any listed impairment.

14  **II.  Considering Plaintiff's Mental Impairments and Symptoms in Deciding RFC**

15        At step four of the sequential evaluation, the ALJ must determine the claimant's

16  RFC and find whether the claimant is capable of performing his past relevant work or any other

17  work that exists in the national economy.  Here, the ALJ determined that plaintiff was not

18  capable of performing his former work as an auto mechanic but that he was capable of

19  performing light work.  (Tr. at 13-14.)  Light work involves lifting no more than 20 pounds at a

20  time with frequent lifting or carrying of objects up to 10 pounds.  20 C.F.R. §§ 404.1567(b) and

21  416.967(b).  A job is in the light work category when it requires either a good deal of walking or

22  standing, or sitting most of the time with some pushing or pulling of arm or leg controls.  Id.  To

23  be capable of performing the full range of light work, the claimant must be able to do

24  substantially all of these activities.  Id.  The ALJ determined that plaintiff's non-exertional

25  limitations did not significantly limit the range of light work available to him and that he was

26  /////

7

1  substantially able to perform all the activities required for light work.  In conclusory fashion,

2  plaintiff argues that the ALJ erred by ignoring the "subjective effect" of plaintiff's symptoms.

3         The record reflects that the ALJ appropriately considered all of plaintiff's relevant

4  limitations, including exertional and non-exertional impairments, in determining plaintiff's RFC.

5  The ALJ made that determination based on all the evidence in the record, including medical

6  reports.  The objective evidence did not establish that plaintiff would have difficulty working due

7  to any mental impairments.  Moreover, consulting psychologist Janice K. Nakagawa, Ph. D.,

8  examined plaintiff and diagnosed him as malingering and on that basis determined it was

9  "impossible to provide any accurate assessment of his functional capabilities to work."  (Tr. at

10  159.)  Plaintiff underwent further psychiatric evaluation over a period of approximately one year

11  at Northgate Point RST during which he received positive mental status reports.  There was no

12  sign of any negative impact on his ability to work, despite being diagnosed with Post Traumatic

13  Stress Disorder (PTSD) and Major Depressive Disorder (MDD).  (Tr. at 182-201.)  It is these

14  mental status reports that the ALJ cites in his decision.  (Tr. at 12-15.)

15         Of course, the mere diagnosis of a mental impairment without objective evidence

16  of a significant impact of that impairment on one's ability to work is not enough to support a

17  finding of disability.  See Sample v. Schweiker, 694 F.2d 639, 642-43 (9th Cir. 1989) (holding

18  that the mere existence of a disorder does not establish disability and requiring "proof of the

19  impairment's disabling severity").  Plaintiff bore the burden of affirmatively proving that he was

20  in fact entitled to a determination of disability based on objective evidence showing limitations

21  on employability.  Plaintiff failed to meet this burden.  Based on the evidence in the record, the

22  ALJ made a proper determination regarding plaintiff's RFC.

23         The ALJ must also consider the claimant's subjective symptoms that are

24  consistent with objective medical evidence.  In this regard, the regulations provide as follows:

25  "In determining whether you are disabled, we consider all your symptoms, including pain, and

26  the extent to which your symptoms can reasonably be accepted as consistent with the objective

8

medical evidence, and other evidence." 20 C.F.R. §416.929(a). In order to reject the claimant's testimony with respect to subjective symptoms, there must be "a specific, cogent reason for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.3d at 834 (quoting Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)). See also Light, 119 F.3d at 792; Reddick, 157 F.3d at 722; Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). In evaluating a claimant's subjective testimony regarding the severity of his symptoms, an ALJ may consider the presence or absence of supporting objective medical evidence along with other factors. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Smolen, 80 F.3d at 1285. Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. See Fair, 885 F.2d at 604 n.5.

         In the decision in this case, the ALJ considered and acknowledged plaintiff's subjective testimony regarding the severity of his symptoms but found that those symptoms cause "no more than moderate restriction in activities of daily living." (Tr. at 13.) The ALJ found that the subjective symptoms reported by plaintiff were not consistent with the capacity to perform light work. The ALJ cited evidence of plaintiff's ability to "lift/carry 20 pounds occasionally and ten pounds frequently, and sit, stand and walk six out of eight hours," as well as medical reports indicating that plaintiff "is alert and oriented, has good eye contact, speech is not pressured and has improved mood." (Tr. at 13.) Indeed, every medical report that considered plaintiff's subjective symptoms appears to have reached the conclusion that plaintiff enjoyed a full capacity to perform light work, despite the existence of mental impairments. (Tr. at 117-201.)[3]

_____

   [3] As noted above, the record includes a finding that plaintiff was malingering by examining psychologist Dr. Nakagawa. (Tr. at 159.) Thus, the ALJ was not required to show "clear and convincing" reasons for not fully crediting plaintiff's testimony. See Lester, 81 F.3d at 834. See also Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1995) (ALJ's reasons for rejecting subjective testimony need not rise to clear and convincing level where there is

1    For the above reasons, the ALJ did not err in his treatment of plaintiff's testimony

2  regarding his subjective symptoms.[4]

3  **III.  Application of the Medical-Vocational Guidelines**

4    As noted above, at step five of the sequential evaluation, the burden shifts to the

5  Commissioner to show, by applying the Medical-Vocational Guidelines (grids) or by taking the

6  testimony of a vocational expert, that the claimant has the RFC to perform other jobs which exist

7  in significant numbers in the national economy.  Burkhart, 856 F.2d at 1340 (citing Desrosiers v.

8  Sec'y of Health & Human Serv., 846 F.2d 573, 578 (9th Cir. 1988)).  "Mechanical" application

9  of the grids is precluded where the claimant's non-exertional limitations are "sufficiently severe"

10  that they significantly limit the range of work permitted by the claimant's exertional limitations.

11  Id. (citing Desrosiers, 846 F.2d at 577).  See also Heckler v. Campbell, 461 U.S. 458, 462 n.5

12  (1983); Tackett, 180 F.3d at 1101-02; Cooper v. Bowen, 815 F.2d 557, 560 (9th Cir. 1987).

13    Here, the ALJ found as follows with regard to plaintiff's RFC:  plaintiff can

14  perform light work (lifting no more than 20 pounds occasionally and 10 pounds frequently) and

15  he has the ability to stand, walk, or sit for six hours in an eight hour day.  (Tr. at 13, 155.)  After

16  taking testimony from a vocational expert, the ALJ found plaintiff not disabled prior to his 55th

17  birthday because there were a significant number of jobs in the national economy, including the

18  positions of parking lot attendant, office helper and storage facility rental clerk, that plaintiff

19  could perform.  (Tr. at 218-19.)

20  /////

21

22  affirmative evidence suggesting that the claimant is malingering); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's failure to give maximum or consistent effort during physical capacity evaluations was a "compelling" reason for ALJ to reject claimant's subjective

23  testimony).

24    [4]  The court notes that the ALJ did not reject plaintiff's testimony.  (Tr. at 14.)  Moreover, plaintiff's testimony regarding his subjective symptoms was very brief.  (Tr. at 205-13.)  The

25  ALJ appears to have credited that testimony regarding plaintiff's ability to lift/carry as well as regarding his daily activities.  (Tr. at 12-13.)  Thus, it is unclear what error plaintiff is claiming

26  took place in this regard.

1    The fact that plaintiff suffered from non-exertional limitations did not preclude

2    use of the grids, because the ALJ found that these non-exertional limitations did not limit

3    plaintiff's RFC. Thus, the ALJ did not err by applying the grids because he determined that

4    plaintiff's non-exertional limitations did not limit plaintiff's ability to perform a full range of

5    light work prior to his 55th birthday. See Tackett, 180 F.3d at 1101-02 (an ALJ may apply the

6    grids when the claimant is capable of performing "the full range of jobs in a given category, i.e.,

7    sedentary work, light work, or medium work," and is not significantly limited in that work by

8    non-exertional limitations); Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) (presence

9    of nonexertional impairment does not preclude use of grids if nonexertional impairment does not

10   limit claimant's ability to perform work); see also 20 C.F.R. § 416.968(a) (defining unskilled

11   work).

12   Plaintiff is correct in stating that the grids should not to be applied mechanically

13   with respect to the age categories in a borderline situation. 20 C.F.R. § 416.963(b). Here,

14   however, after properly evaluating plaintiff's RFC, the ALJ found that plaintiff was disabled as

15   of his 55th birthday based on the directive of Medical-Vocational Rule 202.06. (Tr. at 14.) The

16   ALJ also found, however, that plaintiff was not disabled prior to turning age 55, based on

17   Medical-Vocational Rules 202.13 and 202.14. (Tr. 14.) The ALJ's application of these rules

18   was appropriate because the ALJ had already properly determined that plaintiff was able to

19   perform a full range of light work. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00.

20   The court is not persuaded by plaintiff's argument that the ALJ's reliance on the

21   fact of plaintiff's 55th birthday was "mechanical" and therefore made application of the grids

22   improper. The Commissioner has determined that at age 55 or older a person may have

23   increased difficulty adjusting to new work. 20 C.F.R. § 416.963(e). Recognizing that difficulty

24   adapting to new jobs does not occur immediately and exactly at the age of 55 for every person,

25   the Commissioner permits flexibility in finding disability due to advanced age in borderline

26   situations where the claimant will turn 55 "within a few days to a few months." 20 C.F.R. §

416.963(b).  Plaintiff's argument that "the clear message of the grids is that lack of *skills* is what makes one disabled with a light capacity at age 55" is unpersuasive.  (Pl.'s Mot. for Summ. J. at 6 (emphasis in original).)  The point of the rule in question is that the change that occurs with advancing age is not deterioration or loss of skills, but increased difficulty adjusting to new work.  See 20 C.F.R. § 416.963(e) (age "significantly affects a person's ability to adjust to other work" where the person is of advanced age, *i.e.*, age 55 or older).

Furthermore, contrary to plaintiff's contention, this is not a borderline situation as described in the regulations:  "If you are within a few days to a few months of reaching an older age category . . . we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."  20 C.F.R. § 416.963(b).  Plaintiff initially filed his application for benefits more than a year before his 55th birthday, not mere days or months prior thereto.  In light of the record in this case, a finding that plaintiff was disabled more than a year before his 55th birthday would be an improper application of the regulation governing use of the age categories.[5]

**IV.  Satisfaction of the Duty to Develop the Record**

The ALJ has a duty throughout the proceedings "to fully and fairly develop the record and to assure that the claimant's interests are considered."  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam).  See 20 C.F.R. §§ 416.912(e) & 416.1444.  However, the ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)

/////

---

[5]  The court again notes that the ALJ did receive testimony from a vocational expert. That vocational expert was asked a hypothetical question which incorporated the ALJ's RFC assessment of plaintiff and included his age, education and work experience.  (Tr. at 218.)  The vocational expert testified as to the significant number of jobs available to such persons.  (Tr. at 218-19.)

1    Plaintiff argues that the ALJ did not fulfill his duty of developing the record with

2   respect to the effect of plaintiff's mental impairments on his ability to work.  The only indication

3   in the record that plaintiff's mental impairments might have an impact on his ability to work is

4   examining physician Dr. J. Martin's conjecture at the end of his report dated November 17, 2003

5   in which he stated:  "I suspect based on the claimant's complaints that the claimant might have

6   difficulty maintaining employment while undergoing treatment."  (Tr. at 155.)  However, Dr.

7   Martin conducted only a physical examination of plaintiff to evaluate the effects of his Hepatitis

8   C condition.  Plaintiff's mental impairments were not discussed or assessed at all by Dr. Martin

9   in his report.  (Tr. at 153-55.)  Thus, the treatment referenced by Dr. Martin therein appears to be

10   treatment for plaintiff's *physical* impairments.  Therefore, plaintiff's assertion that Dr. Martin's

11   speculative statement was sufficient to trigger an obligation on the part of the ALJ to explore

12   further the effect of mental impairment on plaintiff's employability is unpersuasive.

13    In addition, the fact that plaintiff was found to suffer from hypertension and major

14   depressive disorder did not trigger any duty on the part of the ALJ to further develop the record.

15   There was no ambiguity in the evidence presented nor did the ALJ find the record to be

16   inadequate.  The record contains no evidence that any treating or examining source had ever

17   assessed any work related limitations arising from any of plaintiff's mental conditions.  In the

18   absence of such evidence, the ALJ was not required to develop the issue further.  Tonapetyan v.

19   Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ambiguous evidence or the ALJ's own finding that

20   the record is inadequate to allow proper evaluation of the evidence triggers the ALJ's duty to

21   conduct an appropriate inquiry); Smolen, 80 F.3d at 1288; see also Matthews v. Shalala, 10 F.3d

22   678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a

23   disability.").

24    Moreover, at the conclusion of the administrative hearing, the ALJ left the record

25   open for submission of additional evidence of mental health treatment, thus providing plaintiff

26   the opportunity to submit any relevant evidence regarding his mental impairments.  (Tr. at 221.)

13

1   This satisfied any duty the ALJ had with respect to developing the record in this regard.  See

2   Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ satisfied duty to develop record where

3   he left record open for submission of supplemental evidence); Smolen, 80 F.3d at 1288.  Plaintiff

4   subsequently submitted the Northgate Point RST mental health treatment records, and the ALJ

5   specifically relied on the mental status examination findings in those records as a partial basis for

6   his decision that plaintiff's mental impairments did not affect his ability to perform light work.

7   (Tr. at 13.)  The ALJ did not preclude additional evidence from being admitted.  Nor did he fail

8   to fully probe the issue of mental impairment.  Plaintiff simply failed to present objective

9   evidence showing a significant impact of mental impairment on his ability to work. The evidence

10  of record was sufficient to support the ALJ's RFC finding with respect to any mental impairment

11  and there was no need to further develop the record.  See Mayes, 276 F.3d at 459-60.

12                                         **CONCLUSION**

13          The court's scope of review in considering decisions granting or denying Social

14  Security benefits is limited.  See Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1374

15  (9th Cir. 1979) ("Congress has mandated a very limited scope of judicial review of the

16  Secretary's decisions granting or denying Social Security disability benefits.")  It is not the

17  court's role to reweigh the evidence or substitute its own judgment for the Commissioner's.  See

18  Winans v. Bowen, 853 F.2d 643, 644-45 (9th Cir. 1987).  Further, if there is conflicting evidence

19  supporting a finding of either disability or nondisability, the ALJ may resolve the conflict so long

20  as there is "more than one rational interpretation of the evidence."  Sprague, 812 F.2d at 1230.

21  See also Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004) (holding that, "if evidence

22  exists to support more than one rational interpretation, we must defer to the Commissioner's

23  decision").

24          Here, plaintiff was found disabled as of December 2004.  While there is some

25  evidence of disability prior to that date, there is also substantial evidence of nondisability.  The

26  record reflects that the ALJ considered all of the evidence and set forth his interpretation of that

1    evidence in his decision.  The court finds the ALJ's interpretation of the evidence to be a rational

2    one.  See Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The

3    trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the

4    evidence can support either outcome, the court may not substitute its judgment for that of the

5    ALJ."); see also Tackett, 180 F.3d 1097 (Commissioner's decision to deny benefits to be

6    disturbed only if it is not supported by substantial evidence or is based on legal error.);

7    Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (same).

8              Accordingly, the court HEREBY ORDERS that:

9              1.  Plaintiff's motion for summary judgment is denied;

10             2.  Defendant's cross-motion for summary judgment is granted; and

11             3.  The decision of the Commissioner is affirmed.

12   DATED: July 9, 2007.

13

14   _____

15   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

16

17   DAD:jp
     Ddad1/orders.socsec/tran0562.order

18

19

20

21

22

23

24

25

26

15